NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2010
Decided May 25, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-3650

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 4:98CR40088-001-JPG |
| | |
| TONY MONTEZ GLADNEY, | J. Phil Gilbert, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

After Tony Gladney admitted to violating conditions of his supervised release, the district court revoked his supervision and ordered him to serve an additional 60 months' imprisonment. Gladney appeals, but his appointed counsel has concluded that the appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Gladney has not responded to counsel's motion, so we review only the potential issues counsel identifies in his facially adequate brief. *See* CIR. R. 51(b); *United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Gladney pleaded guilty in 1999 to one count of conspiring to distribute crack cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1). He faced a statutory minimum of 10 years in prison and a maximum of life imprisonment; his guidelines range was 188 to 235 months. The

district court imposed a 192-month term of imprisonment and a 5-year term of supervised release. Gladney's prison term was reduced in 2001 to 128 months because he provided substantial assistance to the government, and his supervised release began in November 2007. Gladney failed to comply with several conditions of his supervision, so in May 2008 the court modified his supervision and placed him in a halfway house for up to 180 days.

That modification did not deter further violations, and in August 2009 the probation office petitioned for revocation. By then Gladney had violated at least six conditions of his supervision, including the condition that he not commit additional crimes. According to his probation officer, Gladney had committed five more offenses while on supervision, including first-degree murder, possession of a firearm by a felon, aggravated discharge of a firearm, and making false statements. At his revocation hearing, Gladney denied committing the murder but admitted the other crimes. He also admitted to violating four other conditions of his supervision: leaving the judicial district without permission, failing to report to his probation officer, failing to follow the probation officer's directions, and associating with a felon without permission. In view of these uncontested violations, the government did not offer evidence about the murder, and the district court did not make a finding on that allegation.

Based on Gladney's admissions, the district court revoked his supervised release and ordered him to serve a 60-month term of reimprisonment, the statutory maximum. *See* 18 U.S.C. §§ 3583(e)(3), 3559(a)(1); 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii). The reimprisonment range was 37 to 46 months, based on a Grade A violation (aggravated discharge of a firearm) and Gladney's criminal-history category of IV. *See* U.S.S.G. §§ 7B1.1, 7B1.4. Gladney argued in mitigation that a federal judge and assistant United States attorney in St. Louis, Missouri, had told him that his supervised release would not be revoked if state authorities did not prosecute him for the new crimes, and he asked the court to abide by that understanding. He also insisted that he already had been punished for some of his violations; several of them—making false statements, leaving the district without permission, failing to report to the probation officer, and failing to follow the probation officer's instructions—were the same violations that led the court to place Gladney in the halfway house for 180 days. These arguments did not sway the court:

> Mr. Gladney, even apart from the admissions to violations that you say that you were put in a halfway house and feel like you were punished for violating those, your plea to aggravated discharge of a firearm is a very serious offense. The Court notes that you received a 64-month Rule 35 reduction in your sentence for your cooperation with the Government in the judgment of this Court and you've [sic] continued violations of your supervised release, you threw all that away. The Court's going to sentence you to the maximum of 60 months.

Counsel considers arguing on appeal that the district court should not have revoked Gladney's supervised release in light of the assurances he allegedly received from the judge and prosecutor in St. Louis. But Gladney did not back up his representation with evidence—not even his own testimony—so the district court had no basis to conclude that any promise had been made to him. Even if we assume that Gladney received such assurances and that he will not be prosecuted by state authorities, we would find his revocation proper. Refraining from crime was a mandatory condition of Gladney's supervised release, *see* 18 U.S.C. § 3583(d), and the district court had authority to revoke his release once he committed those offenses, *see id*. at § 3583(e)(3). And a promise by a court or prosecutor in another judicial district could not bind the district court here, which sentenced Gladney originally and thus maintained ultimate authority over his supervised release. *See United States v. Monteiro*, 270 F.3d 465, 472 (7th Cir. 2001); *United States v. Lilly*, 206 F.3d 756, 761-62 (7th Cir. 2000).

Counsel also examines whether Gladney could challenge the reasonableness of his term of reimprisonment. Although a district court must consider the range established by U.S.S.G. § 7B1.4 and most of the factors in 18 U.S.C. § 3553(a) before imposing a term of reimprisonment, we would disturb that term only if it was plainly unreasonable. *See* 18 U.S.C. § 3583(e); *United States v. Berry*, 583 F.3d 1032, 1034 (7th Cir. 2009); *United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008).

It would be frivolous to argue that the term in this case is plainly unreasonable. The district court was aware of the guidelines range of 37 to 46 months but explained that 60 months was more appropriate because aggravated discharge of a firearm is a "very serious" offense and Gladney had thrown away the 64-month reduction he had earned for providing substantial assistance to the government. We have consistently approved of weighing the seriousness of the violation of supervised release when selecting a term of reimprisonment, *e.g.*, *Neal*, 512 F.3d at 438; *United States v. Carter*, 408 F.3d 852, 854-55 (7th Cir. 2005); *United States v. Salinas*, 365 F.3d 582, 589 (7th Cir. 2004), and district courts may impose longer terms of reimprisonment if the defendant previously benefitted from a sentence reduction for providing substantial assistance, *see* U.S.S.G. § 7B1.4 cmt. n.4; *United States v. Hergott*, 562 F.3d 968, 970 (8th Cir. 2009); *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007). Moreover, as counsel recognizes, Gladney could not argue that the district court unreasonably refused to credit him with the 180 days he spent at the halfway house. *See* U.S.S.G. § 7B1.5(b) ("Upon revocation of supervised release, no credit shall be given (toward any term of imprisonment ordered) for time previously served on post-release supervision.").

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.